NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, INC., and its affiliate, the Statesville Branch; Charles Roman and Willie Beatty, Plaintiffs,

v.

CITY OF STATESVILLE, NORTH CAROLINA; City Council of Statesville, N.C.; its Successors and Agents; David L. Pressly, Mayor; Council Members Ralph W. Grose, Reese Childers, Frank Crowson, Max Kyles, John Gregory, and William T. Gill and their Succors and Agents; Iredell County Board of Elections, and its members James A. Dobson, Jr., Chairman; Charles C. Lynn and L. Hugh West, Jr. and their Successors and Agents; and Ruby Mosser, Supervisor of the Iredell County Board of Elections, and her Successors and Agents, Defendants.

No. ST–C–84–149.

United States District Court,
W.D. North Carolina,
Statesville Division.

April 15, 1985.

Angus B. Thompson, Jr., Lumberton, N.C., Romallus Murphy, Greensboro, N.C., Charles E. Carter, Assoc. General Counsel NAACP, Margaret Ford, Asst. General Counsel NAACP, NAACP Special Contributions Fund, Brooklyn, N.Y., for plaintiffs.

Jack R. Harris and Gary W. Thomas, Statesville, N.C., for defendants, City of Statesville, City Council of Statesville, David L. Pressly, Jr., Mayor, Council Members, Ralph W. Grose, Reece Childers, Frank Crowson, Max Kyles, John Gregory & William T. Gill.

Robert N. Randall, Mooresville, N.C., for defendants, Iredell Co. Bd. of Elections, & members James A. Dobson, Jr., Charles C. Lynn, L. Hugh West, Jr., their successors & agents, & Ruby Mosser, Supervisor of Iredell Co. Bd. of Elections, her successors & agents.

## ORDER

McMILLAN, District Judge.

By consent order entered separately this day, the parties have resolved the major issues in this case. The current at-large method of electing members of the City Council for the City of Statesville has been declared to violate Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973. The parties have achieved a significant settlement by creating a new city council composed of members representing a combination of single districts (wards) and the city at-large.

The court congratulates the parties, particularly the defendants, for their hard work and open-mindedness in reaching these agreements.

Six of the council members of the newly constituted city council will each represent one of six wards. The boundaries of those wards are established by the consent order. (The "ward system" had existed previously for the sole purpose of determining residency of the candidate but not as a requirement for residency of the person voting for that candidate.) Two of those wards have been designed to contain a black majority voting age population. In this way, the black people of Statesville will have the opportunity to elect at least two members of their choice to the city council in the next election. The new plan provides that the "ward seats" shall be for four years apiece and that election for those seats shall be staggered, with three wards voting for their council representative at a time, so that in 1985, wards 2, 3 and 5 will elect their representatives for a four-year term and ward 4 will elect its representative for

a two-year term. In 1987, wards 1, 4 and 6 will elect their representatives for a four-year term; in 1989, wards 2, 3 and 5 will elect their representatives for a four-year term, and so on.

Under the compromise plan, there are also provisions for two at-large seats on the council. Those council members shall be voted on in a city-wide election.

The issue which the parties pose for the court to resolve is "the least dilutive or discriminatory method and term for electing the two at-large members to the City Council."

By the terms of the consent order,

An evidentiary hearing shall be held for the Court to determine whether the at-large members to the council shall be on staggered terms, elected pursuant to G.S. 163–293(a)(1) (Defendants' position), or whether the at-large members to the council shall be elected as a group, pursuant to G.S. 163–292(a)(2) (Plaintiffs' position). The Court in deciding which method the at-large members of this Council are to be elected, shall also decide the term; and least dilutive or discriminatory effect on minority voters, shall be the basis on which method or term the Court chooses to order. If the Court chooses the at-large staggered method, the City Council shall appoint a member to one of the at-large seats for a two-year term. If the Court chooses the at-large group method, elections shall be held in the year 1985 for the at-large group consisting of two members.

On March 25, 1985, this court held an evidentiary hearing on the issue presented. Plaintiffs presented the testimony of Dr. Paul Luebke, an Associate professor of Sociology at the University of North Carolina at Greensboro, who was qualified as an expert in political sociology. Defendants presented the testimony of Professor Michael Vasu, an Associate Professor of Political Science at North Carolina State University in Raleigh, who was qualified as an expert in computer-assisted statistical analysis of elections and applications to the election systems.

In advocating its preference for a staggered-term method of electing the at-large council members, defendants state that the court should give some deference to the "legislative plan" offered by defendant City Council of Statesville for resolution of the problem. They cite as authority the opinion of the three-judge court in *Gingles et al. v. Edmisten et al.*, 590 F.Supp. 345 (E.D.N.C.1984), in which the court deferred to the legislative scheme for curing the districting defects found in that court's earlier order of January 27, 1984. That case and the principle of judicial deference are not applicable here. By the terms of their own consent order, the parties have defined this court's job as being to determine the method that would have the *least* dilutive or discriminatory effect on minority voters, not merely the method which would be *sufficient* to cure the violations of the Voting Rights Act. Therefore, the court will address the merits of the respective positions of the parties with no deference being accorded either position at the outset.

The expert witnesses for both sides recognized the unfortunate but real phenomenon of "racial polarization" in voting patterns. The statistics in Statesville and across North Carolina show that there is a demonstrable unwillingness by the majority (here white) race to vote for minority (here black) candidates. *See, Gingles et al. v. Edmisten et al., supra,* at 355, 367–369. The converse conclusion could not be reached based on the figures available to that court or this one. *Id.* at 369.

Plaintiff's expert testified that, given such racial polarization in voting, it would be extremely difficult with only one seat at stake, for a black person to be elected in a majority white electorate such as any candidate for one of the at-large seats in Statesville would face. He opined that black voting strength would be less diluted where more than one seat was being filled in the election. He gave two primary reasons: (1) This allows black voters to "single shot," *i.e.* to vote for only one candidate though two seats are being filled, thus giving disproportionate weight to their one

vote (assuming that white voters exercise both their available votes); and (2) This allows black voters to make inter-racial coalitions and agreements whereby blacks agree to cast their second vote for a particular white candidate if that white candidate supports the black candidate, resulting in some "white votes" for the black candidate that he or she would not normally receive.

Dr. Luebke went on to state that as to the preferable *term* of office for the at-large members, four-year terms were preferable to and less dilutive of minority voting strength than two-year terms because (1) two-year seats would be "cheapened" in comparison to four-year seats and (2) it takes up to twice as much financial and educational resources (which statistics show are less available to the black electorate than to the white electorate) to conduct election campaigns twice as often.

In response, defendants' expert, Professor Vasu, stated that he felt that the representation problem in Statesville would be corrected as much as possible by the new combination ward/at-large voting method. Utilizing past election results, he did a number of voting simulations from which he concluded that, *assuming* "strategic voting" (single shot voting by blacks and "retaliatory" "strategic voting" *by whites*), the options advocated by both sides would achieve essentially the same results in terms of black voting power. Professor Vasu testified that he felt that the staggered voting system was preferable because were the group method to be approved and elections held every four years, one group of three wards would, on alternate two years, have neither at-large nor ward candidates to elect and would only have the mayoral election in which to participate. This factor, he said, probably would dilute *all* voter participation. Assuming "single shot" voting by all blacks and assuming no counter-reaction by whites, however, Professor Vasu agreed that under the group method, black voters have a greater opportunity than under the staggered method for electing their preferred candidate.

The ability to "single shot" has been recognized both by the courts and by Congress as a legitimate voting strategy on the part of minority groups. The presence of "anti-single shot provisions" in voting laws and practices is a factor which is recognized as one which "may enhance the opportunity for discrimination against the minority group" and which therefore may be used to establish a violation of the Voting Rights Act. U.S. Congressional and Administrative News (97th Congress, Second Session, 1982) Volume 2, Legislative History, pp. 177, 207.

It is never possible to predict *accurately* how people in large numbers will vote. The *known* factor in this context, however, is that single shot voting is a *possibility* with the group method of electing the at-large members, whereas it is *not* a possibility with the staggered method. Though inter-racial coalitions may be *possible* under the staggered method, they are more *likely* to occur under the immediate pressures created by having two seats available in the same election year. The extent of lowered voter participation by *all* groups in the years in which residents of certain wards would have no office to vote for other than mayor is necessarily speculative; furthermore, its effects may be forestalled by good planning and encouragement by the city, and it is not a factor which has been shown to have a uniquely discriminatory impact on minority voters (which is the issue raised by this case and the consent order).

Given the lack of certainty as to any particular outcome in any given election under any of the options, the court must base the decision (as to which method is least dilutive of minority voting strength) on the *tendency* or *likelihood* of a particular method to prevent dilution of the minority vote. Based on the known factors (ability to "single shot" and opportunity to make effective coalitions), the court finds that the group method of electing the at-large members to the city council is the least dilutive and discriminatory. Elections at four-year rather than two-year intervals

are less demanding of resources scarce in the black community and are therefore less dilutive or discriminatory. The court therefore finds that the proper terms for the at-large city council members are four-year terms.

IT IS THEREFORE ORDERED, pursuant to the requirements of the consent order entered this day, that the at-large members to the Statesville City Council shall be elected as a group and that they shall hold office for four-year terms.

## CONSENT ORDER

Plaintiffs have brought an action challenging the form and method of election of council members to the City Council for the City of Statesville, N.C., on the grounds that said form and method of election is in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973, the Fourteenth and Fifteenth Amendments to the United States Constitution, and 42 U.S.C. 1981.

Counsels for the Plaintiffs and Defendants now come before the Court and show to the Court the following facts and the Court finds the following facts:

1. That the Plaintiff, National Association for the Advancement of Colored People, Inc., through its affiliate, the Statesville Branch, an unincorporated association, having members in the City of Statesville, N.C., has organizational injury because the present method of electing members to the City Council of Statesville causes a class of minority voters protected by 42 U.S.C. 1973 to have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice; and, the function of the Plaintiff organization being the protection of the civil rights of its individual members.

2. That Plaintiff, Willie Beatty, is a black citizen and registered voter of the City of Statesville, Iredell County, and a member of the National Association for the Advancement of Colored People, Statesville Branch.

3. That at the commencement of this action, Plaintiff, Charles Roman, was a black citizen and registered voter of the City of Statesville, Iredell County, North Carolina, and a member of the National Association for the Advancement of Colored People, Statesville Branch; though Plaintiff, Charles Roman, is no longer a citizen and registered voter of the City of Statesville, Iredell County, North Carolina, having changed his residence to the State of South Carolina after this action was commenced; but remains a member of the National Association for the Advancement of Colored People, Statesville Branch.

4. The Defendant, City of Statesville, is a municipal corporation, incorporated under the laws of the State of North Carolina, governed by the Mayor, Defendant, David L. Pressly, and council members, Defendants, Ralph W. Grose, Reece Childers, Frank Crowson, Max Kyles, John Gregory, and William T. Gill.

5. The Defendant, Iredell County Board of Elections, consisting of Defendants, James A. Dobson, Jr., Charles C. Lynn, and L. Hugh West; and Supervisor of Elections, Defendant, Ruby Mosser, is responsible for conducting and certifying the results of primary and general elections for the City of Statesville, North Carolina.

6. That all parties have been properly served and are properly before the Court.

7. That with regard to the Second Claim for Relief in Plaintiffs' Complaint, the present at-large, ward residency, election and run-off election method, provided for in the City Charter, and codified as Chapter 289 of the 1977 Session Laws of the North Carolina General Assembly, causes a class of minority voters protected by 42 U.S.C. 1973 to have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice, and therefore in violation of Section 2 of the Voting Rights Act, as amended.

8. That the City Charter of the City of Statesville be amended to provide six (6) single-member wards, a description of which are set forth in Exhibit "A" attached

hereto, and incorporated by reference herein. The process of redistricting in the City of Statesville was begun prior to the commencement of this action, but the wards as described in Exhibit "A" were adopted after the commencement of this action.

9. That the City of Statesville shall have one (1) council member elected from each ward, and that the candidates for each ward seat must be a resident of the ward in which he or she seeks to be elected, and voted upon only by residents of the ward to which seat he or she seeks to be elected pursuant to N.C.G.S. 163–293(a)(1).

10. That the six (6) ward council seats shall be staggered and open for election for the years and terms as indicated below:

Year 1985: Wards: 2, 5 and 3 for four year term

Ward: 4 for two year term

Year 1987: Wards: 1, 4 and 6 for four year term and open for election every four years thereafter

Year 1989: Wards: 2, 5 and 3 for four year term and open for election every four years thereafter.

11. That an evidentiary hearing be held for the Court to decide the least dilutive or discriminatory method and term for electing the two at-large members to the City Council. The Plaintiffs' position is that the at-large group method, pursuant to G.S. 163–293(a)(2) has the least dilutive or discriminatory effect on minority voting strength. The Defendants' position is that the staggered at-large method, pursuant to G.S. 163–293(a)(1) has the least dilutive or discriminatory effect on minority voting strength.

12. That should the Court decide with the Plaintiffs' position, the at-large elections shall take place in year 1985; and that should the Court decide with the Defendant's position, the City Council shall appoint a member to one of the at-large seats in 1985 for a two-year term, the Court to decide the term and year of election thereafter for this and the other at-large seat.

13. Plaintiffs shall be entitled to reasonable attorney fees and litigation expense in this action in the discretion of the Court, as provided by 42 U.S.C. § 19731(e), and other applicable federal law. The award of attorney fees as to all Defendants shall be against Defendant, City of Statesville only.

From the foregoing findings of fact, the Court concludes as a matter of law:

A. The Court has jurisdiction of this matter, pursuant to 28 U.S.C. 1331 and 1343, and 28 U.S.C. 2201 and 2202.

B. All parties are properly before the Court.

C. That the present at-large, ward residency, election and run-off election method, provided for in the City Charter of Statesville, N.C., and codified as Chapter 289 of the 1977 Session Laws of the North Carolina General Assembly, causes a class of minority voters protected by 42 U.S.C. 1973 to have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice in violation of Section 2 of the Voting Rights Act, as amended.

D. That Plaintiffs and Defendants mutually agree to further settle this matter, pursuant to an evidentiary hearing, from which the Court will decide the method of election and terms, for electing two at-large members to the Council with the least dilutive or discriminatory effect on minority voters; and the Court has jurisdiction over said evidentiary hearing for the purpose of determining which method of election and terms, least dilute or discriminate against the minority voters, with regard to the two at-large members to serve on the City Council.

FROM THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED THAT:

1. The present at-large, ward residency, election and run-off election method provided for in the City Charter of the City of Statesville, Iredell County, North

Carolina, violates Section 2 of the Voting Rights Act, as amended.

2. The City of Statesville shall implement before the 1985 election of members to the City Council the following method of election:

A. There shall be six (6) single-member wards which are described in Exhibit "A" attached hereto and incorporated by reference.

B. There shall be one council member elected from each ward, and the candidates for each ward seat must reside in the ward which he or she seeks to be elected, to be voted upon only by the qualified voters who reside in the ward to which the candidates seek to be elected from pursuant to N.C.G.S. 163–293(a)(1).

C. Ward seats number 2, 5 and 3 shall be open for election in year 1985 for four year terms, and shall be open for election every four years thereafter. Ward seat number 4 shall be open for election in the year 1985 for a two-year term; and again open for election in the year 1987 for a four-year term, and shall be open for election every four years thereafter.

D. Ward seats 1, 4 and 6 shall be open for election in the year 1987 for four year term, and open for election every four years thereafter.

E. There shall be two at-large members elected to the City Council, voted upon by the qualified voters of the entire city.

F. An evidentiary hearing shall be held for the Court to determine whether the at-large members to the council shall be on staggered terms, elected pursuant to G.S. 163–293(a)(1) (Defendants' position), or whether the at-large members to the council shall be elected as a group, pursuant to G.S. 163–292(a)(2) (Plaintiffs' position). The Court in deciding which method the at-large members of this Council are to be elected, shall also decide the term; and least dilutive or discriminatory effect on minority voters, shall be the basis on which method or term the Court chooses to order. If the Court chooses the at-large staggered method, the City Council shall appoint a member to one of the at-large seats for a two-year term. If the Court chooses the at-large group method, elections shall be held in the year 1985 for the at-large group consisting of two members.

3. Plaintiffs shall be entitled to reasonable attorney fees and litigation expenses in this action in the discretion of the Court, as provided by 42 U.S.C. 19731(e), and other applicable federal law. The award of attorney fees as to all Defendants shall be against Defendant, City of Statesville, only.

4. This cause is retained for further orders of the Court.

ENTERED BY CONSENT THIS THE __12__ day of __April__, 1985.

/s/ _____
James B. McMillan, U.S. District Court Judge

CONSENTED TO:

/s/ _____
Angus B. Thompson, Jr.
P.O. Box 1167
Lumberton, NC 82359
(919) 738-2431

/s/ _____
Romallus O. Murphy
P.O. Box 20383
Greensboro, NC 27420

ATTORNEYS FOR PLAINTIFFS

/s/ _____
Jack R. Harris, Attorney for
City of Statesville
P.O. Box 1111
Statesville, N.C. 28677
704-873-2121

/s/ _____
Gary W. Thomas, Of Counsel
HARRIS & PRESSLY
P.O. Drawer 31
Statesville, N.C. 28677
704-872-7691

ATTORNEYS FOR: City of Statesville, City Council of Statesville, David L. Pressly, Jr., Mayor, Council Members, Ralph W. Grose, Reece Childers, Frank Crowson, Max Kyles, John Gregory, William T. Gill

/s/ _____
Robert N. Randall
149 E. Iredell Avenue
Mooresville, NC 28115
704-663-3221

ATTORNEY FOR: Iredell County Board of Elections and Its Members, James H. Dobson, Charles C. Lynn, L. Hugh West, Jr. and Ruby Mosser

## EXHIBIT A

### BOUNDARY DESCRIPTION FOR NEW WARDS

*Introduction to New Ward Boundaries*—All street boundary descriptions are to be considered from the center line of the street.

*EXAMPLE:* Where we say Davie Avenue, we mean the center line of Davie Avenue and thus all persons who live on the north side of Davie Avenue would be in Ward 1 and all persons living on the southern side of Davie Avenue/Mocksville Road would vote in Ward 2. The same would also apply for the description following the railroad tracks as a boundary, using the center line of the tracks as a dividing line.

*Ward 1—Boundary Description*—Beginning at a point which is the intersection of Radio Road and the northern city limits and following Radio Road in a southerly direction to its intersection with Hartness Road; thence across Hartness Road and following Holland Drive to its intersection with Bost Street; thence following Bost Street in a southeasterly direction to its intersection with Woods Drive; thence following Woods Drive in a southwesterly direction to its intersection with Brevard Street; thence following Brevard Street in a southeasterly direction to its intersection with Tradd Street; thence following Tradd Street in a southerly direction to its intersection with Stockton Street; thence following Stockton Street in a westerly direction to its intersection with North Center Street; thence following North Center Street in a southerly direction to its intersection with East Broad Street; thence following East Broad Street in a northeasterly direction to its intersection with Oakwood Drive; thence following Oakwood Drive north to its intersection with Davie Avenue, US Highway 21 and 64 East; thence following Davie Avenue/Mocksville Road in a northeasterly direction to the northeast boundary of the city limits; thence following the northeastern boundary and the northern boundary of the city limits to the point of beginning at Radio Road.

*Ward 2—Boundary Description*—Beginning at a point in the northeastern city limits lying at the intersection of Fourth Creek and Davie Avenue/Mocksville Road, US 64-21 and running in a southwesterly direction along Davie Avenue/Mocksville Road to its intersection with Oakwood Drive; thence in a southerly direction along Oakwood Drive to its intersection

with East Broad Street; thence in a westerly direction along East Broad Street to its intersection with Center Street; thence following South Center Street to its intersection with Front Street; running in a easterly direction along East Front Street to its intersection with Salisbury Road; thence in a southeasterly direction along Salisbury Road to its intersection with Garfield Street; thence following Garfield Street in a southwesterly direction to its intersection of Old Salisbury Road; thence following Old Salisbury Road to its intersection with Opal Street; thence following Opal Street to its intersection crossing of the Southern Railroad track; thence following the railroad tracks to its intersection of I–77; thence following the center line of I–77 to a point extended from the deadend of Dogwood Lane; thence with Dogwood Lane in a easterly direction to its intersection with Eastside Drive; thence across Eastside Drive and following Scott Road to its intersection with Huskins Street; thence following in a southerly direction Huskins Street to its intersection with Eastover Drive; thence following Eastside Drive to its intersection with the eastern city limits line; thence following the eastern city limits line in a northerly direction to its point of beginning at the intersection of Fourth Creek and Mocksville Road.

*Ward 6—Boundary Description*—Beginning at a point at the eastern city limits line to its intersection with Eastover Drive and following in a westerly direction on Eastover Drive to its intersection with Huskins Street; thence in a north northwesterly direction following Huskins Street and Scott Road to its intersection with Eastside Drive; thence across Eastside Drive following Dogwood Lane in a westerly direction to a point extended at the deadend of Dogwood Lane to I–77; thence along I–77 in a southerly direction to its intersection with the Southern Railroad tracks; thence following the Southern Railroad tracks in a westerly direction to its intersection with Fourth Street; thence in a southerly direction along Fourth Street to its intersection with Asheville Avenue; thence following Asheville Avenue in a southwesterly

direction to its intersection with Sixth Street/Boulevard; thence following Boulevard/Sixth Street in a southerly direction to the western portion of Fayetteville Avenue; thence following Fayetteville Avenue in a westerly direction to its intersection with Lynnwood Drive; thence following Lynnwood Drive in a southerly direction to its intersection with the southern city limits line; thence following the southern city limit line in the eastern city limit line to its point of beginning at Eastover Drive.

*Ward 3—Boundary Description*—Beginning at a point in the southern city limit line at its intersection with Lynnwood Drive and following Lynnwood Drive in a northerly direction to its intersection with the western portion of Fayetteville Avenue and following Fayetteville Avenue in an easterly direction to its intersection with Sixth Street (Boulevard); thence following the Boulevard/Sixth Street in a northerly direction to its intersection with Asheville Avenue; thence following Asheville Avenue in a northeasterly direction to its intersection with Fourth Street; thence following Fourth Street in a northerly direction to its intersection and crossing of the Southern Railroad tracks; thence following the railroad tracks in a easterly direction to its intersection and crossing of Opal Street; thence following Opal Street to its intersection with Old Salisbury Road; thence following Old Salisbury Road in a northwesterly direction to its intersection with Garfield Street; thence following Garfield Street in a northeasterly direction to its intersection with Salisbury Road (US 70); thence following Salisbury Road in a northwesterly direction to its intersection with East Front Street; thence following East Front Street in a westerly direction to its intersection with South Center Street; thence following South Center Street to its intersection with West Sharpe Street; thence following West Sharpe Street in a westerly direction to its intersection with South Mulberry Street; thence following South Mulberry Street in a southerly direction to its intersection with Western Avenue; thence following Western Avenue in

a westerly direction to its intersection with the Southern Railroad tracks; thence following the Southern Railroad tracks in a westerly direction to its intersection and crossing at Cochran Street; thence following Cochran Street in a southwesterly direction to the intersection of Cochran Street and Industrial Boulevard; thence following Industrial Boulevard in a northwesterly direction to its intersection with Newton Drive (US Highway 70–64); thence following Newton Drive (US Highway 70–64) in a southwesterly direction to its intersection with Park Drive; thence following Park Drive in a southerly direction to its intersection with Vista Terrace/Bristol Road; thence following Bristol Road in a westerly direction to its intersection with the western city limits line; thence following the western and southern city limit line to the point of beginning at the intersection of the southern city limits and Lynnwood Drive.

*Ward 5—Boundary Description*—Beginning at a point in the northern city limit line and its intersection with Northside Drive and following Northside Drive in a northeasterly direction to the intersection of Northside Drive and North Center Street (US Highway 115); thence following North Center Street in a southeasterly direction to its intersection with North Race Street; thence following North Race Street in a southerly direction to its intersection with Alexander Street; thence following Alexander Street in a westerly direction to its intersection with Patterson Street; thence following Patterson Street in a southeasterly direction to its intersection with Cherry Street; thence following Cherry Street in a easterly direction to its intersection with Race Street; thence following South Race Street in a southerly direction to its intersection with West Sharpe Street; thence following West Sharpe Street to its intersection with Cochran Street; thence following Cochran Street in a southwesterly direction to its intersection with Industrial Boulevard; thence following Industrial Boulevard in a northwesterly direction to its intersection with Newton Drive (US Highway 70–64); thence following Newton

Drive (US 70–64) in a southwesterly direction to its intersection with Park Drive; thence in a southerly direction along Park Drive to its intersection of Vista Terrace and Bristol Road; thence in a westerly direction along Bristol Road to its intersection with the western city limit line; thence following the western and northern city limit line to a point of beginning at the city limit line at its intersection with Northside Drive.

*Ward 4—Boundary Description*—Beginning at the intersection of Radio Road and the northern city limit line and following Radio Road in a southerly direction to its intersection with Hartness Road and crossing Hartness Road and following Holland Drive to its intersection with Bost Street; thence following Bost Street in a southeasterly direction to its intersection with Woods Drive; thence following Woods Drive in a southwesterly direction to its intersection with Brevard Street; thence following Brevard Street in a southeasterly direction to its intersection of Tradd Street; thence following Tradd Street in a southerly direction to its intersection with Stockton Street; thence following Stockton Street in a westerly direction to its intersection of North Center Street; thence following North Center Street in a southerly direction to its intersection with West Sharpe Street; thence following West Sharpe Street in a westerly direction to its intersection with South Mulberry Street; thence following South Mulberry street in a southerly direction to its intersection with Western Avenue; thence following Western Avenue to its intersection crossing of the Southern Railroad tracks; thence following the Southern Railroad tracks in a northwesterly direction to its intersection and crossing at Cochran Street; thence following Cochran Street in a northeasterly direction to its intersection of West Sharpe Street; thence following West Sharpe Street to its intersection at South Race Street; thence following South Race Street in a northerly direction to its intersection with Cherry Street; thence following Cherry Street to a westerly direction to its intersection with

Patterson Street; thence following Patterson Street in a northerly direction to its intersection with Alexander Street; thence following Alexander Street in a easterly direction to its intersection with North Race Street; thence following North Race Street to its intersection of North Center Street (NC Highway 115); thence following North Center Street (NC Highway 115) to its intersection with Northside Drive; thence following Northside Drive to its intersection with the northern city limit line; thence following the new northern city limit line to the point of beginning at the intersection of Radio Road and the northern city limits which is the point of beginning.