**HUNTINGTON BRANCH, NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE; Housing Help, Inc.; Mabel Harris; Perrepper Crutchfield; Kenneth L. Cofield, Plaintiffs–Appellees,**

v.

**TOWN OF HUNTINGTON, NEW YORK; United States Department of Housing and Urban Development; Samuel R. Pierce; Kenneth C. Butterfield; Claire Kroft; Kenneth Deegan; Edward Thompson; Joseph Clemente, Defendants,**

**Town of Huntington, New York; Kenneth C. Butterfield; Claire Kroft; Kenneth Deegan; Edward Thompson; Joseph Clemente, Defendants–Appellants.**

No. 298, Docket 91–6124.

United States Court of Appeals, Second Circuit.

Argued Oct. 9, 1991.

Decided April 13, 1992.

Richard C. Cahn, Melville, N.Y. (Cahn Wishod Wishod & Lamb, of counsel), for defendant-appellant Town of Huntington.

Leon Friedman, New York City (Richard Bellman, of counsel), for plaintiffs-appellees.

Before: OAKES, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from that portion of a judgment and order of the United States District Court for the Eastern District of New York (Glasser, J.), which increased an award of attorneys' fees in a civil rights action by $377,276.73, enhancing by 75 percent the lodestar figure of $503,035.65. In granting plaintiffs' application in this manner, the district court increased the allowance for plaintiffs' two principal attorneys from a lodestar hourly rate of $225 to an enhanced rate of $393, and made this retroactive to 1981, the year the attorneys were retained. The allowance for the attorneys' two associates and an NAACP attorney was increased from a lodestar rate of $135 per hour to approximately $170 per hour. The district court's MEMORANDUM AND ORDER is reported at 749 F.Supp. 62 (E.D.N.Y.1990), *modified,* 762 F.Supp. 528 (E.D.N.Y.1991), and familiarity with it is assumed.

The district court arrived at the lodestar figures by looking to the rates that prevailed in the pertinent field and community in 1990. Neither the record nor the district court's opinion discloses what plaintiffs' attorneys were charging in 1981 or in any of the intervening years during which their associates were employed. The Supreme Court has said that district courts may use currently prevailing rates to compensate for delay in payment of fees previously earned. *See Missouri v. Jenkins,* 491 U.S. 274, 282–84, 109 S.Ct. 2463, 2468–69, 105 L.Ed.2d 229 (1989). This does not mean, however, that district courts must do so. *See Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1060 (2d Cir. 1989), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990). It would be unfair, for example, to use current rates where the services at issue were performed in protracted litigation and current inflated rates did not reflect with some degree of accuracy the loss attributable to delay. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1153 (2d Cir.1983). Because defendants have not pursued their challenge to the lodestar awards on appeal, the issue of historical rates and enhancement attributable to delay in payment need not concern us insofar as those awards are concerned. However, because defendants continue to contest the retroactive 75 percent enhancement of the lodestar figures, the issue of historical rates continues to be of significance.

After some uncertainties, the law now is well settled that the lodestar figure in a fee-shifting case is strongly presumed to be reasonable, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I"*), and that "enhancement of an award may no longer be justified on the basis of factors such as the novelty of the issues, the complexity of the litigation, the high quality of the representation, or the number of people benefited," *Krieger v. Gold Bond Bldg. Prods.,* 863 F.2d 1091, 1099 (2d Cir.1988) (citing *Blum v. Stenson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–1550, 79 L.Ed.2d 891 (1984)). Modifications of the lodestar figure are permissible, if at all, only in "certain 'rare' and 'exceptional' cases supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Delaware Valley I, supra,* 478 U.S. at 565, 106 S.Ct. at 3098 (quoting *Blum, supra,* 465 U.S. at 899, 104 S.Ct. at 1549); *see also Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

The Supreme Court has rejected the argument that a prevailing party is entitled to a fee augmentation to compensate for the risk of nonpayment. *Missouri v. Jenkins, supra,* 491 U.S. at 282, 109 S.Ct. at 2468 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*)). Prior to the Supreme Court's decision in *Delaware Valley II,* however, we had held that the element of risk is pertinent to the extent that it makes it difficult for a would-be plaintiff to secure competent counsel. In *Lewis v. Coughlin,* 801 F.2d 570, 576 (2d Cir.1986), we said that "an attorney's fee award should be only as large as necessary to attract competent counsel" and that "one relevant factor bearing on high-risk is whether other counsel had declined to take the case because there was little or no prospect of earning a fee." This holding was quoted with apparent approval by Justice White who wrote for four justices in *Delaware Valley II, supra,* 483 U.S. at 731 n. 12, 107 S.Ct. at 3089 n. 12. Justice

O'Connor, who concurred in part in *Delaware Valley II,* restated the proposition in her own words:

> I would also hold that a court may not enhance a fee award any more than necessary to bring the fee within the range that would attract competent counsel.

*Id.* at 733, 107 S.Ct. at 3090.

Other circuits also have recognized the relevance of evidence that unretained counsel had declined to take the case because of the risk of nonpayment. *See Fadhl v. City and County of San Francisco,* 859 F.2d 649, 651 (9th Cir.1988) (case rejected by 35 other lawyers); *Clark v. City of Los Angeles,* 803 F.2d 987, 991 (9th Cir.1986) (case rejected by at least 10 other lawyers); *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 614 (1st Cir.1985) (district court directed to determine on remand whether other attorneys refused to take the case because of risk of nonpayment). The court below held, however, that it was irrelevant whether plaintiffs had approached lawyers other than those they retained and had been turned down because of the risk of not recovering.

■ Subsequent to *Delaware Valley II,* we have adhered to our prior holdings, *see Dague v. City of Burlington,* 935 F.2d 1343, 1360 (2d Cir.1991), *cert. granted,* — U.S. ——, 112 S.Ct. 964, 117 L.Ed.2d 130 (1992); *Friends of the Earth v. Eastman Kodak Co.,* 834 F.2d 295, 298 (2d Cir.1987), and we do so here. We do not decide whether proof of substantial difficulties in finding counsel can be established in other cases by lawyers' conclusory affidavits, such as were used in the instant case, although to some extent we share the misgivings of the en banc majority of the Court of Appeals for the District of Columbia as expressed in *King v. Palmer,* 950 F.2d 771, 779 (D.C.Cir.1991) ("We think it is indisputable that if such evidence were treated as determinative, or even weighty, the substantial difficulties test would be met so easily as to become a mere formality."). We hold that in the instant case the issue of substantial difficulties in finding representation requires some specific factual development, because one of the plaintiffs is the Huntington Branch, National Association for the Advancement of Col-

ored People, "whose purpose in society is to eliminate racial discrimination in housing, employment, education and other areas...." *Huntington Branch NAACP v. Town of Huntington,* 530 F.Supp. 838, 839 (E.D.N.Y.1981), *rev'd,* 689 F.2d 391 (2d Cir. 1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 947 (1983). As a general rule, fee enhancement is unnecessary "where plaintiffs secure help from organizations whose very purpose is to provide legal help through salaried counsel to those who themselves cannot afford to pay a lawyer." *Delaware Valley II, supra,* 483 U.S. at 726, 107 S.Ct. at 3087; *see also New York State Ass'n for Retarded Children, Inc. v. Carey, supra,* 711 F.2d at 1154.

The active role that the NAACP, acting through staff and associate counsel, has played in these areas of the law is too well known to require citation. It is worth noting, however, that when an action strikingly similar to the instant one was brought against the Town of Oyster Bay in 1972, NAACP attorneys represented the plaintiff, and the NAACP sought to be added as a party plaintiff "because of its special interest in the problems of housing and discrimination and in order to secure for its members, a great many of whom are Black, economically disadvantaged persons in the New York metropolitan area, equal housing and land use opportunities in the Town." *Fair Housing Dev. Fund Corp. v. Burke,* 55 F.R.D. 414, 421 (E.D.N.Y.1972). We note also that Charles Sanders, an Assistant General Counsel of the NAACP, aided in the preparation and trial of the action below; that Thomas Atkins, Curtis Rodgers and Margrett Ford, other Assistant General Counsel, who have represented the NAACP in such diverse districts as the Western District of North Carolina, *see NAACP, Inc. v. Statesville,* 606 F.Supp. 569, 570 (W.D.N.C.1985), and the Eastern District of Michigan, *see NAACP, Detroit Branch v. Detroit Police Officers Ass'n,* 620 F.Supp. 1173, 1176 (E.D.Mich.1985), were "of counsel" to the plaintiffs on the first appeal to this court, *see* 689 F.2d at 392, and that Grover G. Hankins, NAACP's General Counsel, was "on the brief" for plaintiffs on the second appeal, *see* 844 F.2d 926, 927 (2d Cir.1988), *aff'd,* 488 U.S.

15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988). This is not an unusual practice. Even where the NAACP is not named as a party plaintiff, as it is in the instant case, it often participates in the legal proceedings. *See, e.g., Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 206, 93 S.Ct. 364, 365, 34 L.Ed.2d 415 (1972); *Banks v. Perk,* 341 F.Supp. 1175, 1177 (N.D.Ohio 1972). Former Judge Costantino was squarely on the mark when he said that one of NAACP's purposes in society was to eliminate housing discrimination.

The affidavits of the several attorneys, upon which plaintiffs rely in seeking to justify an enhanced hourly rate of $393, discuss neither the 1981 prevailing rate nor the fact that the Huntington Branch of NAACP is a plaintiff in the case. Neither do they discuss how much of an inducement is reflected in Suffolk Housing Services' promise to pay part of plaintiffs' attorneys' fees and its actual payment of $52,000. Without deciding whether affidavits such as these, standing alone, would be sufficient to warrant a fee enhancement in another case, we hold that they do not suffice in the instant case.

■ The district court's MEMORANDUM AND ORDER has few of the "detailed findings" based upon "specific evidence" that the Supreme Court held to be necessary for the modification of lodestar awards. *Delaware Valley I, supra,* 478 U.S. at 565, 106 S.Ct. at 3098. Accordingly, upon the remand which we now order, the district court, before ordering a fee enhancement, should make detailed findings supported by specific evidence in the record concerning the following: (1) the customary charges made by plaintiffs' attorneys in 1981; (2) plaintiffs' efforts and specifically those of the plaintiff Huntington Branch, NAACP, to secure or furnish counsel; (3) the effect that NAACP's presence in the case, both as party and counsel, had on the need for fee enhancement; (4) whether Charles Sanders, an Assistant General Counsel for the NAACP, is entitled to an enhancement of his lodestar fees; (5) the effect on the need for fee enhancement of Suffolk Housing's agreement to pay part of the attorneys' fees; (6) the circumstances concerning the receipt and the pos-

sible obligation of the plaintiffs or their attorneys to return to Suffolk Housing the $52,000 that it paid to plaintiffs' attorneys. In light of these findings, the district court will then be able to determine (a) whether any fee enhancement is appropriate, and, if so, in what amount, (b) whether plaintiffs or their attorneys are legally obligated to return the $52,000 to Suffolk Housing, (c) whether a multiplier, if allowed at all, should in any event be applied to the non-contingent fee of $52,000, and (d) whether the multiplier, if allowed at all, should be applied to the fees accrued after the 1988 decisions which removed the contingency of recovery from the case.

That part of the district court's judgment and order allowing a fee enhancement is vacated and the matter is returned to the district court for further proceedings consistent with this opinion. The district court may, however, defer further proceedings to await possible additional enlightenment in this troublesome area by the Supreme Court's anticipated decision in *Dague v. City of Burlington, supra*, in which certiorari has been granted.