936 F.2d 118
 Charles FASSETT, a minor suing By and Through his mother and
next friend Rita FASSETT, Plaintiff-Appellee,
v.
Charles HAECKEL, individually and in his official capacity
as an Officer in the Police Department of New
Haven, Connecticut, Defendant-Appellant.
 No. 862, Docket 90-7775.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 18, 1991.
Decided June 25, 1991.
 
 Martin S. Echter, Deputy Corp. Counsel, New Haven, Conn., for defendant-appellant.
 D. Kirt Westfall (Williams & Wise, of counsel), New Haven, Conn., for plaintiff-appellee.
 Before OAKES, Chief Judge, CARDAMONE and MAHONEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Charles Haeckel appeals from a judgment of the United States District Court for the District of Connecticut, Peter C. Dorsey, Judge, entered after a jury trial, finding him liable for violations of appellee Charles Fassett's Fourth Amendment rights and granting Fassett's post-trial motion for $1 in nominal damages and for attorney's fees. For the reasons set forth below, we affirm.
 
 BACKGROUND
 
 2
 At approximately 10:45 a.m. on January 31, 1984, Charles Haeckel, an on-duty police officer of the New Haven Police Department, responded to a radio dispatch identifying a suspicious automobile in the area of 285 Nicoll Street in New Haven. Upon arriving at the scene and discovering that the vehicle was no longer there, Haeckel proceeded to investigate the surrounding area, and came upon two young white males, one seated inside a parked automobile, and the other--appellee Charles Fassett--on the sidewalk next to the car. There is no indication in the record that this vehicle matched the description of the car originally reported.
 
 
 3
 Haeckel called in the license plate number of the automobile and was informed that, according to information in the police department's computer, persons associated with the vehicle "might" have outstanding warrants for their arrest. According to Haeckel's own testimony, however, the computer's information was not always up to date, and the dispatcher was therefore unable to determine without further research whether the warrants did, in fact, exist. There is no indication in the record that Haeckel sought to confirm whether the warrants existed, or to determine the names of the persons for whom the warrants may have been issued.
 
 
 4
 After speaking with the dispatcher, Haeckel approached the parked vehicle in his patrol car, whereupon both of the young men walked away in different directions. Haeckel eventually caught up with Fassett and asked him his name, address, and date of birth. "Being a little scared and confused," Fassett testified, he stated that he was born in 1969, instead of 1968. Haeckel then asked Fassett why he was not in school, and Fassett responded that school had been cancelled due to the snow.
 
 
 5
 After this brief conversation, Haeckel ordered Fassett to get into the patrol car, and he drove Fassett to the home of Jane Murphy, Fassett's grandmother, who had been taking care of Fassett. Upon arriving at the Murphy residence, Haeckel told Fassett to remain in the car while he approached the house to speak with Mrs. Murphy. According to Fassett, Haeckel told Mrs. Murphy that he intended to take Fassett to the Union Avenue police station. After returning to the car, however, Haeckel drove Fassett to the home of Fassett's parents and released him.
 
 
 6
 On February 20, 1986, Fassett brought suit in the United States District Court for the District of Connecticut, claiming violations of his Fourth Amendment rights and alleging a pendent state-law claim of false imprisonment. On May 4, 1989, Haeckel moved for summary judgment. He argued that, having received information from the dispatcher that persons associated with the vehicle next to which Fassett was standing might be wanted criminals, and having reason to believe that Fassett might have been a truant from school, he was authorized, under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967), to stop Fassett and detain him briefly.
 
 
 7
 On August 10, 1989, the court, in an opinion by Ellen B. Burns, Chief Judge, denied Haeckel's motion, on the ground that questions of fact existed as to whether the stop was justified at its inception, as well as whether the continued detention of Fassett was reasonable. A trial was then held before Peter C. Dorsey, Judge. At the close of trial, Judge Dorsey instructed the jury that, if it found Haeckel liable on either count, it could award compensatory or nominal damages, and could also award punitive damages if it found that Haeckel's actions were undertaken maliciously. The judge did not instruct the jury, however, that it was required to award at least nominal damages in the event it found a violation of Fassett's rights.
 
 
 8
 The jury returned a verdict for Fassett on the Fourth Amendment claim, and for Haeckel on the false imprisonment claim. It did not award any damages, either compensatory, nominal, or punitive. Haeckel then brought a motion for judgment notwithstanding the verdict, and Fassett moved for an award of nominal damages and attorney's fees. The court denied Haeckel's motion and granted Fassett's, and Haeckel brought this appeal.
 
 DISCUSSION
 1. Liability
 
 9
 Haeckel first challenges the jury's conclusion that his detention of Fassett was unlawful. Because this argument is essentially a challenge to the district court's denial of his motion for judgment notwithstanding the verdict, our review is limited to determining "whether the evidence, viewed in the light most favorable to the party that secured the verdict, was sufficient to allow a reasonable juror to arrive at the verdict rendered." Schwimmer v. Sony Corp., 677 F.2d 946, 952 (2d Cir.), cert. denied, 459 U.S. 1007, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982). Applying this standard, we believe the jury's verdict must be upheld.
 
 
 10
 The jury had before it two possible grounds for finding a Fourth Amendment violation. First, it could have determined that the seizure of Fassett was unlawful from its inception,[1] because Haeckel lacked reasonable and articulable grounds to suspect Fassett of a crime. See Terry, 392 U.S. at 30, 88 S.Ct. at 1884. Reviewing the evidence before the jury, we are unable to conclude that such a finding would have been unreasonable. Initially, we note that, while the information in the computer may have provided Haeckel with reasonable suspicion to investigate Fassett about the outstanding warrants, Haeckel made no effort to verify the computer's information, nor did he attempt to determine whether any of the warrants had been issued for Fassett. As such, the jury could reasonably have concluded that Haeckel was not, in fact, investigating the outstanding warrants at all, and that his detention of Fassett could therefore not be justified on that basis. As to Haeckel's contention that he had reason to believe that Fassett was a truant, the jury was free to agree with Chief Judge Burns's conclusion that Haeckel had no interest in truancy violations at the time of the detention, and that his reference to the truancy statute at the time of litigation was nothing more than "a post-hoc attempt to justify his actions."
 
 
 11
 Moreover, even if the jury accepted Haeckel's contention that the stop, at its inception, was a lawful investigative detention within the scope of Terry, it could reasonably have rested its finding of liability on an alternative ground--namely, that the duration of the stop was unreasonably prolonged. See Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."); United States v. Miller, 546 F.2d 251, 253 (8th Cir.1976) ("[T]he right to seize a person for questioning or any other purpose, absent probable cause for arrest, is a very limited one and a person should not be detained for such purpose longer than is reasonably necessary to accomplish the foregoing objective.").[2] In particular, it might have concluded that, having taken Fassett to his grandmother's house, having verified his identity, and having decided not to investigate further either the outstanding warrants or the possibility that Fassett should have been in school, there was no reason to continue the seizure by ordering Fassett to remain in the car, threatening to take him to the police station, and then driving him an additional distance to his parents' home. It is true, of course, that the detention extended only a few minutes beyond the arrival at Mrs. Murphy's home. The length of an unlawful detention, however, goes only to the issue of damages, and does not render an otherwise unlawful detention legally valid.
 
 
 12
 Accordingly, because the jury's finding that Haeckel violated Fassett's Fourth Amendment rights was not unreasonable, we affirm the finding of liability.
 
 2. Damages
 
 13
 Haeckel next argues that the court should not have granted Fassett's post-trial motion for an award of nominal damages of $1. We disagree. In Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court determined that a plaintiff who suffers a deprivation of an absolute right, but who is unable to prove actual damages, is "entitled to recover nominal damages not to exceed one dollar." Id. at 267, 98 S.Ct. at 1054. In Smith v. Coughlin, 748 F.2d 783 (2d Cir.1984), we interpreted Carey as requiring an award of nominal damages where the plaintiff proves a deprivation of an absolute right. See id. at 789.[3] Accordingly, the court's failure to instruct the jury that it was required to award nominal damages in the event it found a Fourth Amendment violation was erroneous, and the court was justified in correcting this error by granting Fassett's post-trial motion. See Fed.R.Civ.P. 60(b) (providing that the court may relieve a party from a final judgment for, among other reasons, mistake); see also Ruggiero v. Krzeminski, 928 F.2d 558 (2d Cir.1991) (upholding district court's entry of nominal damages after the jury found a Fourth Amendment violation but did not award actual damages).
 
 3. Attorney's Fees Award
 
 14
 Haeckel's final contention is that the district court should not have granted Fassett's motion for attorney's fees. Specifically, he claims that Fassett was not a "prevailing party" within the meaning of 42 U.S.C. Sec. 1988, which authorizes an award of attorney's fees for prevailing parties in civil rights actions. However, "[a] party who achieves only partial success in his or her suit may be considered to be a 'prevailing party' where he or she 'succeed[s] on any significant issue in litigation which achieves some of the benefit ... sought in bringing suit.' " Ruggiero, 928 F.2d at 564 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation omitted)). Where, as here, the jury finds that the plaintiff was deprived of an absolute constitutional right sufficient to justify an award of nominal damages under Carey, an award of attorney's fees under section 1988 is appropriate. See Ruggiero, at 564-65.
 
 
 15
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 Although the parties treat the entire incident between Haeckel and Fassett as a Fourth Amendment seizure, it seems to us that the seizure did not really begin until Haeckel directed Fassett into the police car, thereby indicating that Fassett was not free to leave. See California v. Hodari D., --- U.S. ----, ----, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991) (noting that "a seizure occurs 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen' ") (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)) (emphasis omitted). Until that time, it seems more appropriate to treat the incident as an "encounter" implicating no Fourth Amendment concerns. See United States v. Lee, 916 F.2d 814, 819 (2d Cir.1990) ("[A] police officer is free to approach a person in public and ask a few questions; such conduct, without more, does not constitute a seizure.")
 
 
 [2]
 We note that the court specifically instructed the jury that "[t]he scope and duration of the detention must be no greater than is reasonably necessary to confirm or dispel the officer's suspicion."
 
 
 [3]
 In this regard, we agree with the opinion of the late Judge Harrison Winter in Ganey v. Edwards, 759 F.2d 337, 341-42 (4th Cir.1985) (Winter, J., concurring in part and dissenting in part)