**Solomon MYREE, Sr., Plaintiff,**

v.

**LOCAL 41, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Defendant.**

No. 85–CV–1427S.

United States District Court,
W.D. New York.

March 31, 1994.

John Giardino, Giardino & Schober, Buffalo, NY, for plaintiff.

Craig Miller, Diebold, Farmelo, Gorman, Ginsberg, Gervase & Miller, Buffalo, NY, for defendant.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Presently before this Court is plaintiff's motion for attorneys' fees and costs. Following a five-day non-jury trial in February 1991, this Court, by a Decision and Order dated March 6, 1992, held that defendant Local 41 International Brotherhood of Electrical Workers ("defendant") had discriminated against plaintiff Solomon Myree, Sr. ("plaintiff") based on his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 2000e *et seq* ("Title VII"). Thereafter, a four day non-jury trial was held on March 1 to March 4, 1993 on the issue of damages. Although plaintiff failed to establish backpay damages, and was not entitled to compensatory or punitive damages because this Court determined that the Civil Rights Act of 1991 is not to be retroactively applied, this Court did award plaintiff $25,000 in lieu of admission to the union. (Decision and Order, 85–CV–1427, July 9, 1993). Plaintiff now seeks an award of attorneys' fees in the amount of $6,550 to James Hagerty, plaintiff's original counsel, and $76,037.92 to the firm of Giardino & Schober. In addition, plaintiff also seeks to recover $3,720.40 for expert witness fees.

In support of the motion to recover attorneys' fees and costs, plaintiff has submitted the affidavit of plaintiff's counsel John Giardino, Esq. with exhibits (Giardino Aff.) as well as the reply affidavit of plaintiff's counsel with attached exhibit (Giardino Reply). In opposition to plaintiff's motion, defendant has submitted the affidavit of defendant's counsel Craig Miller, Esq. with attached exhibit (Miller Aff.). Finally, this Court has also considered the arguments regarding attorneys' fees raised by the parties in their respective pre and post trial memoranda.

Having considered the parties submissions, the overall performance of plaintiff's counsel in this matter as well as the degree of success achieved by plaintiff, this Court will grant plaintiff's motion. However, for reasons stated herein, this Court will limit the award of attorney's fees as follows: (1) $6,400 to James Hagerty, and (2) $50,371.42 to the firm of Giardino and Schober.

### DISCUSSION

■ Under the American Rule, "no attorneys' fees are recoverable absent express statutory authority for such an award." *Wil-*

*der v. Bernstein,* 965 F.2d 1196, 1201 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 410, 121 L.Ed.2d 335 (1992). However, on many occasions Congress has specifically empowered federal courts to award attorneys' fees to prevailing parties. Such is the case with 42 U.S.C. § 1988 and 42 U.S.C. § 2000e–5(k). Plaintiff brought the present action pursuant to Title VII, and, therefore, § 2000e–5(k) is the fee shifting provision which governs determination of the present motion. Defendant has misidentified § 1988 as the applicable fee shifting provision (Miller Aff. ¶ 2). However, "[b]oth [of these provisions] provide that 'the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs.'" *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993). The Supreme Court has viewed the similar language found in these provisions as "'a strong indication' that they are to be interpreted alike." *Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 758 n. 2, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989); *see also Scelsa v. City Univ. of N.Y.,* 827 F.Supp. 1073, 1075 (S.D.N.Y.1993) ("the standards for awarding fees are the same under both statutes") (citation omitted). Therefore, defendant's arguments under § 1988 are relevant to this Court's analysis of plaintiff's motion for attorneys' fees and costs under § 2000e–5(k).[1]

The initial inquiry under § 2000e–5(k) focuses on whether a plaintiff is a "prevailing party." On the second page of its response affidavit, defendant commences to identify what it believes to be the "Prevailing vs. Non–Prevailing Issues." Defendant argues that plaintiff advanced a variety of theories to establish liability at trial, but was only successful on one of these. (Miller Aff. ¶ 3). Further, defendant argues that "[p]laintiff did not prevail on any of his damage claims he presented at trial", and was merely awarded $25,000 in lieu of ordering that plaintiff be admitted to the union. (Miller Aff. ¶ 4). Defendant then concludes that fees and costs related to the theories upon which plaintiff did not succeed are unrecoverable, because these unsuccessful claims are analytically distinct from those which he was successful on. (Miller Aff. ¶ 5).

 Although it is not entirely clear, defendant appears to assert, by the above cited arguments, that plaintiff is not a prevailing party because of the limited relief that he actually obtained. However, for purposes of determining whether plaintiff is a prevailing party, it is wholly irrelevant to consider "whether the plaintiff prevailed on the central issue by acquiring the primary relief sought." *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 787, 109 S.Ct. 1486, 1491, 103 L.Ed.2d 866 (1989). Quite simply, whether the "'primary relief sought in a disparate treatment action under Title VII [was] reinstatement, backpay, or injunctive relief … merely distracts the district court from the primary purposes behind [the fee shifting provision] and is essentially unhelpful in defining the term 'prevailing party.'" *Id.,* 489 U.S. at 791, 109 S.Ct. at 1493.[2] Rather, the Supreme Court has stated that to be considered a prevailing party,

> the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant … Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought … In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's be-

---

1. This Court also notes that since the legal standards for the recovery of attorneys' fees and costs are the same under both of these statutes, prior decisions involving both statutes will be relevant for purposes of resolving the present motion.

2. The amount of plaintiff's recovery is irrelevant only for the purposes of determining whether plaintiff was a prevailing party. On the other hand, "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under [§ 2000e–5(k) ]." *Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986).

havior in a way that directly benefits the plaintiff.

*Farrar v. Hobby,* — U.S. —, —, 113 S.Ct. 566, 572–73, 121 L.Ed.2d 494 (1992) (citations omitted).

■ In the present case, there can be no question that plaintiff obtained such a result. Following a non-jury bench trial on liability, this Court concluded that plaintiff established, by a preponderance of the evidence, that defendant discriminated against him by conditioning his union membership upon the passage of an exam, whereas non-minority apprentices were afforded union membership before taking such an exam. Although plaintiff was unsuccessful on other theories of discrimination which were advanced, this does not diminish the fact that he "prevailed" in establishing that he was the victim of unlawful racial discrimination. Likewise, although plaintiff did not establish he was entitled to backpay, or that the Civil Rights Act of 1991 should be applied retroactively to allow him to recover compensatory and punitive damages, plaintiff did prove that he was entitled to union membership in lieu of which he was awarded $25,000. Thus, plaintiff's lawsuit required defendant to alter its behavior in a way that directly benefited plaintiff and altered the legal relationship between the parties. *See Ruggiero v. Krzeminski,* 928 F.2d 558, 564 (2d Cir.1991) (Even though plaintiff "did not establish their claims in all respects" and "no compensatory damages were awarded" legal relationship of parties was still changed). Under these circumstances, plaintiff was a prevailing party within the meaning of § 2000e–5(k).

■ Having determined that plaintiff was a prevailing party, this Court turns to the calculation of "what constitutes a reasonable attorney's fee. The lodestar approach governs the initial estimate of reasonable fees." *Grant v. Martinez,* 973 F.2d at 99. Calculation of the lodestar involves "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). Although adjustments to the initial estimate can be made depending on the special circumstances of a particular case, "there is a presumption that the lodestar figure is reasonable." *Dague v. Burlington,* 935 F.2d 1343, 1358 (2d Cir.1991) (citations omitted).

■ Defendant has challenged the reasonableness of both the hours and the hourly rate plaintiff has put forward for purposes of calculating the lodestar figure. Defendant first challenges the reasonableness of the hourly rates which were billed by plaintiff's counsel. James J. Hagerty, plaintiff's original counsel seeks to be reimbursed at an hourly rate of $100.00 per hour (Giardino Aff.Exh A). Defendant does not objected to this fee. Mr. Giardino's firm seeks to be reimbursed at hourly rates of "$150.00 for partner time and $85.00 for associate time" (Giardino Aff. ¶ 6). Defendant argues that Mr. Hagerty forty-two years of trial experience and hourly rate of $100.00 evidence that the $150.00 hourly rate of Mr. Giardino and his partner Mark F. Scarcello who have ten and nine years of trial experience, respectively, are unreasonable (Miller Aff. ¶¶ 15–18). However, this difference in billable rates is, at least in part, due to the fact this litigation was somewhat protracted and extended across the span of many years.[3] In situations such as this, it is usually appropriate to "divide the litigation into two periods, applying the current rate to the recent phase and the historic rate to the earlier phase." *Grant v. Martinez,* 973 F.2d at 100. The different time periods at which Mr. Hagerty and Mr. Giardino were involved in this case accounts for at least part of the discrepancy in their billable rates.[4] Further, the relevant inquiry is what were the prevailing billable rates at

---

**3.** Plaintiff's former counsel James Hagerty has indicated that the $100.00 per hour rate was the billable rate used by his former law firm at the time they represented plaintiff in this action (Giardino Aff.Exh. A ¶ 2).

**4.** Although the Supreme Court has recognized "that district courts may use currently prevailing rates to compensate for delay in payment of fees previously earned", *Huntington Branch, N.A.A.C.P. v. Huntington,* 961 F.2d 1048, 1049 (2d Cir.1992) (citing *Missouri v. Jenkins,* 491 U.S. 274, 282–84, 109 S.Ct. 2463, 2468–69, 105 L.Ed.2d 229 (1989)), such enhanced compensation has not been sought by plaintiff's attorney James Hagerty.

the time the services were rendered, and whether an attorney's services are deserving of such fees. Thus, the relevant inquiry is not whether the rates charged by Mr. Giardino were greater than those of Mr. Hagerty, but rather, whether the rates charged by Mr. Giardino's firm were reasonable.[5]

More specifically, prevailing parties "are entitled to reasonable hourly rates which fall within the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *New York State NOW v. Terry*, 737 F.Supp. 1350, 1361 (S.D.N.Y.1990) (citations omitted), *aff'd in part, rev'd in part*, 961 F.2d 390 (2d Cir. 1992). Plaintiff's counsel has cited *Nolley v. County of Erie*, 802 F.Supp. 898 (W.D.N.Y. 1992), as evidence that their billing rates are commensurate with those of other trial attorney's involved in discrimination cases in the Western District of New York. Although plaintiff's counsel in *Nolley* was awarded $82,527 in attorneys' fees, the decision does not indicate the billable rate that was used. Rather, plaintiff's counsel merely offers the conclusory assertion that trial counsel in the *Nolley* case was a 1985 law graduate who received an hourly rate of $130.00 (Giardino Reply ¶ 22). However, it is apparent that the rates charged by Mr. Giardino's firm reflect those charged by similarly situated attorney's in the Western District of New York. For instance, in *Holmes v. Sobol*, Docket · # 88–CV–541L (W.D.N.Y.1991), Judge Larimer held that the representation that attorneys with 15 years' experience earn from $150 to $200 per hour for specialized litigation in federal court to be accurate and that such rates are well within the range of rates charged by comparable attorneys for similar suits in this community. *See also Malarkey v. Texaco, Inc.*, 794 F.Supp. 1237, 1246 (S.D.N.Y.1992) (counsel inexperienced

in civil rights cases awarded $175 per hour for partners, $100 per hour for associates), *aff'd,* 983 F.2d 1204 (2d Cir.1993); *Cabrera v. Fischler,* 814 F.Supp. 269, 288–89 (E.D.N.Y. 1993) (Summarizing cases holding that plaintiff's counsel entitled to rates of $135–$225 per hour). Having been involved in trial practice for approximately ten years, plaintiff's counsel were experienced litigators. Given their experience coupled with their competent performance in what was a somewhat complex discrimination trial this Court finds that plaintiff's counsel is entitled to be compensated at their identified billing rates which are commensurate with those in the prevailing market.[6] *See Riverside v. Rivera,* 477 U.S. at 570, 106 S.Ct. at 2692 (Affirming district court's finding that "counsel's excellent performances in this case entitled them to be compensated at the prevailing market rates, even though they were relatively young when the litigation began").

With respect to the number of hours billed, defendant has not challenged the number of hours submitted by plaintiff's original counsel James J. Hagerty for his work on this case between 1987 thorough 1989. (Giardino Aff. ¶ 4 & Exh. A). Mr. Hagerty's billing statement was attached to plaintiff's amended pretrial statement filed on November 24, 1992. Having reviewed the number of hours billed by Mr. Hagerty, this Court finds the 65.5 hours billed to be reasonable. Therefore, the lodestar with respect to Mr. Hagerty shall be $6,550.

Defendant also challenges the reasonableness of the amount of time billed by plaintiff's counsel. (Miller Aff. ¶¶ 9–14). Rather than attack the reasonableness of specific billing entries, defendant asserts that the fee submission by plaintiff's counsel "is excessive on its face" because it comprises "4 months to 5½ months of a full work year for a

---

**5.** Obviously, however, the rates charged by Mr. Hagerty are relevant for determining the prevailing rates within the community.

**6.** These rates are $150.00 per hour for partner time and $85.00 per hour for associate time (Giardino Aff. ¶ 6). Defendant has also objected that the billing rate for associate time should be adjusted to reflect a different billing rate for work performed before and after Bridget Faso

was admitted to the bar. (Miller Aff. ¶¶ 17 & 19). Although billing rates for associate time are sometimes adjusted based on such a factor, this Court finds that $85.00 is a reasonable billing rate for both pre and post bar admitted law school graduates. This is especially true in the present case, where Bridget Faso, the associate with Mr. Giardino's firm who devoted considerable time to this matter, performed commendably.

practicing attorney." (Miller Aff. ¶ 10). Further, defendant notes that discovery in this case had been completed by the time "Mr. Giardino received the counsel assignment order of Judge Curtin." (Miller Aff. ¶ 13). Finally, defendant notes that over 36% of the total hours submitted on the attorneys' fee application were attributable to the research and drafting of legal memoranda. (Miller Aff. ¶ 14). In making these argument, defendant fails to acknowledge that the involvement of Mr. Giardino's firm with this case was spread out over a period beginning in February of 1990 and continuing through May 1993. Further, defendant fails to give due consideration to complexity and number of factual and legal issues involved. Significantly, as defendant acknowledges, plaintiff advanced four separate theories of discrimination (Miller Aff. ¶ 3).

■ With respect to defendant's argument that the amount of time billed to the research and drafting of legal memoranda is excessive, there is one matter which does warrant closer examination. Specifically, the amount of time designated for researching and drafting memoranda related to the issue of damages. Although this Court finds no problem with the amount of time Mr. Giardino and Mr. Scarcello have billed with respect to these matters, Bridget Faso, an associate with Mr. Giardino's firm, has billed what this Court has identified to be in excess of 100 hours related to the issue of damages. While the billing of such a large number of hours initially raises concerns, this must be balanced against the fact that the legal issues concerning damages were complicated by the passing of the Civil Rights Act of 1991 and whether its provisions for compensatory and punitive damages should be applied retroactively. Having given due consideration to the complexity of the issues involving damages presented by this case, this Court finds that the number of hours billed by Ms. Faso to be reasonable. Therefore, upon review of plaintiff's billing statement, this Court finds the hours billed by Mr. Giardino's firm were reasonable to accomplish the designated tasks.

■ In addition, the reply papers of plaintiff's counsel also contain an additional request for reimbursement of expert fees totaling $3,720.40 (Giardino Reply ¶ 27). Defendant has not responded to this additional request. As authority for the award of expert fees, plaintiff's counsel cites *Williams v. New York*, 728 F.Supp. 1067, 1072 (S.D.N.Y. 1990). In *Williams*, Judge Patterson specifically held that "Section 1988 authorizes recovery of costs for experts required for effective representation." *Id.*, 728 F.Supp. at 1071. However, since the time of that decision, the Supreme Court has stated "we conclude that § 1988 conveys no authority to shift expert fees." *West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991); *Rivera v. Dyett*, 762 F.Supp. 1109, 1118 (S.D.N.Y. 1991).[7] In addition, plaintiff's counsel has not argued such fees should be shifted pursuant to 28 U.S.C. § 1920 and § 1821. Therefore, plaintiff's request for $3,720.40 in expert fees must be denied. As such, the lodestar figure with respect to Mr. Giardino's firm shall be $76,037.92.

■ This Court's inquiry does not end with the determination of a lodestar figure. "Although there is a strong presumption that the lodestar figure represents the reasonable fee, other considerations may lead to an upward or downward departure from the lodestar." *Grant v. Martinez*, 973 F.2d at 101 (quotations omitted). The most critical factor to consider is the degree of success obtained. *Dague v. Burlington*, 935 F.2d at 1359. In this case, defendant argues that the lodestar should be adjusted downward to reflect plaintiff's limited success. In *Grant v. Martinez*, the Second Circuit Court of Appeals summarized the two step test for deter-

---

**7.** It is apparent that the Supreme Court's determination that expert fees are not subject to fee shifting was overruled by the Civil Rights Act of 1991. *Cabrera v. Fischler*, 814 F.Supp. at 291; *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1306 n. 13 (N.D.Cal.1992). However, based on the Second Circuit's decision in *Butts v. New*

York Dep't of Hous. Preservation and Dev., 990 F.2d 1397 (2d Cir.1993), this Court has already indicated that the provisions of the 1991 Act will not be applied retroactively. (Decision and Order, 85-CV-1427S, July 9, 1993, at 14, 1993 WL 455294, *6).

mining whether there should be a downward adjustment of the lodestar figure as follows: [a]t step one of this analysis, the district court examines whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded. The hours spent on unsuccessful claims should be excluded from the calculation. At step two, the district court determines whether there are any unsuccessful claims interrelated with the successful claims. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award. If a plaintiff has obtained excellent results, however, the attorneys should be fully compensated.

*Id.,* 973 F.2d at 101 (citations omitted).

 The first step requires this Court to consider whether the claims on which plaintiff did not succeed involved "different facts and legal theories" as compared to those upon which plaintiff did prevail. *Texas State Teachers Assn.,* 489 U.S. at 789, 109 S.Ct. at 1492. No award should be made for such unsuccessful claims because they are to "be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services" performed in relation to such claims. *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). In the present case, plaintiff advanced several theories of unlawful discrimination at trial. All of these were based on Title VII and premised on the fact that plaintiff had not been admitted to the union. Thus, despite the fact that plaintiff was only successful in proving one theory of liability all of the theories he advanced were factually and legally related. Similarly, plaintiff's various theories of damages theories were related to the matters on which he was successful. Therefore, there is no billable time which needs to be excluded as being attributable to unsuccessful claims unrelated to those upon which plaintiff did succeed.

At step two of this analysis this Court is faced with a number of unsuccessful claims which are factually and legally related to those upon which plaintiff did succeed. Determination of whether such circumstances warrant a downward adjustment of the lodestar figure is "more complex" than the downward adjustment that would be required at step one. *Texas State Teachers Assn.,* 489 U.S. at 789, 109 S.Ct. at 1492. The most critical factor to consider is the degree of success that was obtained by the plaintiff. In this regard, the Supreme Court has noted that although "the plaintiff often may succeed in identifying some unlawful practices or conditions ... the achievement of prevailing party status may say very little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* (quotations omitted). If a reduction of the lodestar is appropriate, the amount of the reduction is left to the equitable discretion of the district court which must either "identify specific hours that should be eliminated or ... simply reduce the award to account for the limited success of the plaintiff." *Id.,* 489 U.S. at 789–90, 109 S.Ct. at 1492. Although "reductions are not always required when plaintiffs fail to succeed on every issue", *Dague v. Burlington,* 935 F.2d at 1359, it must be emphasized that it is this Court's "responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" *Farrar v. Hobby,* —— U.S. at ——, 113 S.Ct. at 575 (*citing Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (1989)).

In this case, plaintiff has advanced a number of theories for liability and damages, but has only obtained limited success. At the liability trial, plaintiff proffered two main contentions.[8] First, that the Journeyman Electrician Exam had a disparate impact on minority trainees. Second, that requiring minority trainees to first pass the exam before they could become members of Local 41 while non-minority apprentices were afforded union membership upon entering the apprentice program discriminated against him based upon his race. Plaintiff was successful in establishing the second of these two theo-

---

8. While there were two main theories of liability, disparate impact and disparate treatment, defendant correctly points out that plaintiff advanced three separate theories of intentional discrimination (Miller Aff. ¶ 3). However, for purposes of this analysis this Court has consolidated plaintiff's three theories of discrimination as the two identified above.

ries. The significance of the fact that plaintiff established that he had been the victim of racial discrimination cannot be understated. By establishing that the Union had intentionally discriminated against him plaintiff not only took a step towards obtaining relief for himself, but also acted "as a 'private attorney general' vindicating a policy that Congress considered of the highest importance.'" *Riverside v. Rivera*, 477 U.S. at 575, 106 S.Ct. at 2694. Considering the importance of vindicating his rights as well as exposing the discriminatory practices of defendant, this Court finds that it would be inappropriate to reduce lodestar based on the plaintiff's failure to succeed on every theory of liability. Therefore, this Court will deny defendants motion to reduce the lodestar by the amount of billings attributable to theories of liability upon which plaintiff did not succeed. As such, plaintiff's counsel is entitled to the majority billings through March 7, 1992.[9]

However, this Court finds that a different conclusion is required with respect to billable time spent addressing the issue of damages. In *Grant v. Martinez*, 973 F.2d 96 the Second Circuit rejected defendants argument that the Supreme Court's decision in *Riverside v. Rivera* established that "primary consideration be given to proportionality in the calculation of a fee award, except in the rare cases in which the public interest is served by vindication of constitutional rights." Significantly, the Second Circuit reaffirmed its prior statement made in *Cowan v. Prudential Ins. Co.*, 935 F.2d 522 (2d Cir.1991) that "[a] presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." *Id.*, 935 F.2d at 526. Moreover, the Second Circuit has held "a reduction made on the grounds of a low award to be error unless the size of the award is the result of the quality of representation." *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir.1985). The Second Circuit has also concluded that even an award of nominal damages will usually justify an award of attorneys' fees. *Fassett v. Haeckel*, 936 F.2d 118, 121–22 (2d

Cir.1991); *Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir.1992).

Subsequent to these decisions by the Second Circuit, the Supreme Court stated that "having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, or multiplying the number of hours reasonably expended by a reasonably hourly rate." *Farrar v. Hobby*, —— U.S. at ——, 113 S.Ct. at 575 (citations omitted). Especially significant to the present context was the Supreme Court's statement that "[w]here recovery of private damages is the purpose of civil rights litigation, a district court in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought" when determining whether the lodestar should be reduced. *Id.* (quotations omitted). Thus, while the rule that attorneys' fees should only be awarded proportionate to the ratio between damages sought and actually obtained has been rejected, *Riverside v. Rivera*, 477 U.S. at 576–81, 106 S.Ct. at 2695–97; *Grant v. Martinez*, 973 F.2d at 102, there can be no question that a court may consider the limited success in obtaining the relief being sought in exercising its discretion to adjust the amount of attorneys' fees to be awarded. Importantly, the fact that a plaintiff recovers only nominal damages does not, in and of itself, justify awarding low fees. As Justice O'Connor stated in her concurring opinion in *Farrar*, "[e]very nominal damage award has as its basis a finding of liability, but obviously many such victories are pyrrhic ones." *Id.*, —— U.S. at ——, 113 S.Ct. at 578. Accordingly, the key consideration in determining whether a downward adjustment to the attorneys' fees being sought is appropriate is a "comparison between the relief sought and the relief granted by the court." *Hop Wah v. Coughlin*, 1993 WL 133721, *2 1993 U.S.Dist. LEXIS 5443, *5–6 (N.D.N.Y.1993).

9. On this date, a status conference was held to review the Decision and Order filed on March 6, 1992 regarding the non-jury trial on the issue of liability. This date is of significance because the majority of the billings before this date were addressed to the liability issues, while the majority of billings after this date were addressed to the damages issues.

■ There is little question that the primary relief sought by plaintiff was monetary damages. Plaintiff sought to recover the following: (1) backpay; (2) 9% interest on backpay; (3) compensatory and punitive damages pursuant to the Civil Rights Act of 1991; and (4) union membership. At trial on the issue of damages, plaintiff submitted no proof of actual lost wages or employment opportunities as a result of the union's failure to offer him union membership prior to passing the exam as it did for non-minority apprentices. Plaintiff wholly failed to establish that he was entitled to any form of backpay award. Furthermore, since this Court determined that the Civil Rights Act of 1991 should not be applied retroactively, plaintiff was unable to establish that he was entitled to compensatory or punitive damages. Although plaintiff made extensive efforts attempting to prove entitlement to money damages, such efforts were entirely fruitless.

The manner in which this action was prosecuted demonstrated that plaintiff was primarily interested in obtaining monetary relief. Although plaintiff received a monetary award in lieu of being admitted to the union, it is significant that plaintiff did not obtain a monetary award under the theories which were vigorously litigated by his attorneys at trial. Specifically, plaintiff had sought in excess of $199,000 on the theory of backpay as well as substantial compensatory and punitive damages to be determined by the court, but did not obtain any award on these theories (See Plaintiff's Amended Pretrial Statement for Damages at 2). The only relief sought and which this Court found plaintiff was entitled to was admission to the union. However, plaintiff gave this remedy little attention at trial and devoted less than two pages to this issue in his proposed findings of fact and conclusions of law memoranda. The limited importance of this remedy was also evidenced by the fact that defendant did not even address this issue at trial. While the proof established that plaintiff was entitled to such relief, the evidence at trial demonstrated that such relief would be of little value to plaintiff. Faced with these circumstances, this Court constructed an equitable remedy by which plaintiff would receive a monetary award in lieu of being admitted to the union. Thus, plaintiff sought hundreds of thousands of dollars in monetary relief, but only attained a limited financial remedy on an equitable theory which was not advanced by counsel. Although it is important that plaintiff corrected the wrong of defendant's past discriminatory practices, since he was primarily interested in obtaining substantial money damages but received none, his actual success in this action was limited. Having fully considered the facts, procedural history and performance of counsel in this matter, this Court finds that all billing entries attributable to the issue of damages should be reduced by 75%.[10] *See United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir. 1989) (Affirming district court's determination that bill be reduced by 20% to reflect a reasonable fee in light of the limited success achieved.).

Having examined the billing statements submitted by plaintiff, this Court finds that reducing the time billed to addressing the issue of damages by 75% results in a downward adjustment of $25,666.50 for the bill submitted by Mr. Giardino's firm.[11] In addi-

---

10. In *Farrar v. Hobby,* the Supreme Court stated that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Id., —— U.S. at ——, 113 S.Ct. at 575 (quotations omitted). Although this Court has awarded "nominal damages" in the sum of $25,000.00, the rule of *Farrar* should not be strictly applied in this case. The use of the term nominal in the present context should not be confused with its more common usage involving *de minimis* recoveries not exceeding one dollar. *See e.g., Carey v. Piphus,* 435 U.S. 247, 287, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978). When the resolution of a case involves tens of thousands of dollars the type of nominal disposition considered in *Farrar* is not present. *See Grant v. Martinez,* 973 F.2d at 101. Based on the facts of this case, this Court determined that a deduction of 75% with respect to time spent addressing the issue of damages was appropriate.

11. This Court's determination that the bill submitted by Mr. Giardino's firm should be reduced by $25,666.50 was calculated as follows. First, having reviewed the billing statement, this Court determined that 158.2 hours of "associate time" and 138.5 hours of "partner time" had been billed to addressing the issue of damages. These

tion, the 75% reduction eliminates $150.00 from the bill submitted by Mr. Hagerty.[12] Therefore, plaintiff shall recover from defendant $56,771.42 to cover attorneys' fees; $50,371.42 owing to Mr. Giardino's firm, and $6,400.00 owing to Mr. Hagerty.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for attorneys' fees is granted. However, to account for plaintiff's limited success and ensure that the fee recovered by plaintiff's attorneys is reasonable, this Court exercises it discretion to reduce the fee sought by plaintiff such that defendant shall pay plaintiff, as attorneys' fees, $56,771.42.

### ORDER

IT HEREBY IS ORDERED that plaintiffs' motion for attorneys' fees is granted to the extent that defendant shall pay $56,-771.42 to plaintiff as attorneys' fees.

SO ORDERED.

---

billings totaled $34,222.00. This Court then subtracted 75% of this amount, $25,666.50, from the total bill submitted by the Mr. Giardino's firm, $76,037.92. The resulting fee award to Mr. Giardino's firm is thereby calculated to be $50,-371.42.

**12.** This Court's determination that the bill submitted by Mr. Hagerty should be reduced by $150.00 was calculated as follows. First, this Court determined that two hours had been billed to addressing the issue of damages. With a billing rate of $100.00 per hour, a seventy-five percent reduction necessitated lowering Mr. Hagerty's bill by $150.00.