Shlomo HELBRANS, Plaintiff,

v.

Philip COOMBE, Jr., As Acting Commissioner of Department of Correctional Services of The State of New York, James Bird, Warden of Rikers Island Correctional Facility, and Anthony J. Schembri, Commissioner of Department of Correctional Services of the City of New York, Defendants.

No. 94 Civ. 8662 (HB).

United States District Court, S.D. New York.

May 19, 1995.

Duker & Barrett, and Gerald L. Shargel, New York City, for plaintiff.

Atty. Gen. of State of N.Y. by Valerie Singleton, New York City, for defendants.

### OPINION AND ORDER

BAER, District Judge:

Plaintiff Shlomo Helbrans moves this court for an award of attorneys' fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, codified at 42 U.S.C. § 1988 ("Section 1988"). Helbrans seeks reimbursement of the legal fees he incurred in this action against the defendants (the "State") for injunctive relief under the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*, the Civil Rights Act, 42 U.S.C. §§ 1981 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*

For the reasons that follow, Helbrans' motion is GRANTED. The fees requested, however, shall be reduced in accordance with this opinion.

### Background

Helbrans, an Orthodox Hasidic Jew and, at one time, the Rabbi of a Yeshiva in Monsey, New York, adheres to a religious tradition forbidding the removal of facial hair. He claims that this prohibition is a fundamental tenet of Hasidic Jewry, and applies with even greater force to Hasidic Rabbis. Apparently, the origins of the prohibition trace to scholarly interpretation of the Torah's admonition: "They shall not shave an edge of their beard." Leviticus, 19:27.

In November 1994, Helbrans was found guilty of kidnapping in the Second Degree and Conspiracy in the Fourth Degree, after which he was incarcerated on Rikers Island pending sentencing. The offenses involved the abduction of a thirteen year old Jewish boy, whom Helbrans was bent on converting from a secular upbringing to a strict Orthodox lifestyle. On November 22, 1994, Helbrans was sentenced to serve in state prison two concurrent sentences of four to twelve years and one to three years.

On November 30, 1994, before his transfer to state custody, Helbrans commenced this action, by Order to Show Cause, under the RFRA, the Civil Rights Act, and the Declaratory Judgment Act. He sought to enjoin the State from removing his facial hair upon his reception at State prison pursuant to prison Directive 4914 ("Inmate Grooming Standards"), which requires all newly committed inmates to receive an initial shave and haircut upon arrival so that they may be photographed for identification purposes. After the initial shave, the Directive allows inmates to grow facial hair up to one inch in length. Directive 4914 further provides that inmates who obtain a court order to enjoin the enforcement of the initial shave requirement must be placed in administrative segregation.

On November 30, 1994, the court granted Helbrans' application for a temporary restraining order and directed the State to show cause why a preliminary injunction should not issue restraining them from removing Helbrans' facial hair, or from otherwise interfering with his rights.

Helbrans thereafter retained a computer imaging expert and, on the second day of the preliminary injunction hearing, produced computer-generated photographs of himself sans facial hair. After reviewing the photographs, the parties agreed to resolve the action without further litigation. The parties entered into a stipulation on January 6, 1995, precluding the defendants from (1) removing Helbrans' beard; and (2) placing Helbrans in administrative segregation or imposing on Helbrans any other form of disciplinary action for refusing to shave.

On January 25, 1995, the hirsute Helbrans moved for an award of attorneys' fees under Section 1988. His attorneys—Duker & Barrett ("D & B"), a New York City law firm with approximately twenty-five attorneys in its New York City office, and Gerald L. Shargel, a solo practitioner—have submitted fees totalling $78,739.00, comprising approximately 282 billed hours.

Helbrans is currently incarcerated at the Green Haven Correctional Facility in Stormville, New York.

### Discussion

#### A. *Prevailing Party Under Section 1988*

■ Section 1988 permits the court, in its discretion, to grant reasonable attorneys' fees to prevailing parties in actions enforcing civil rights claims. Congress intended the statute to compensate "private attorneys general" in order to encourage private enforcement of civil rights statutes:

> citizens must have the opportunity to recover what it costs them to vindicate these [civil] rights in court.... If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

S.Rep. No. 1011, 94th Cong., 2d Sess. 1, 2 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5910, 5913; *see also Mid–Hudson Legal Servs., Inc. v. G & U, Inc.* 578 F.2d 34, 37 (2d Cir.1978) (legislative history of Section 1988 indicates that Congress intended for attorneys who successfully enforce civil rights laws to receive reasonable compensation). To achieve its remedial purpose, Section 1988 should receive broad application. *Mid–Hudson Legal Servs.* 578 F.2d at 37.

■ In awarding attorneys' fees in a civil rights action, the plaintiff must be the prevailing party. *Koster v. Perales,* 903 F.2d 131, 134 (2d Cir.1990); *Gingras v. Lloyd,* 740 F.2d 210, 212 (2d Cir.1984); *Sharrock v. Harris,* 489 F.Supp. 913, 914 (S.D.N.Y.1980). The crux here is whether Helbrans was the "prevailing party" for purposes of Section 1988. Helbrans claims that he prevailed because he successfully enforced his civil rights by maintaining his facial hair while in the State's custody. Conversely, the State claims that Helbrans did not prevail because the parties voluntarily settled the case by stipulation and order, in which the State did not concede the validity of its defenses or admit any liability.

■ According to the Supreme Court, the mere fact that a claim has been resolved by

settlement does not preclude a finding that the plaintiff is a prevailing party for purposes of awarding attorneys' fees. *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987); *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980). It is clear that a party may prevail when it vindicates rights through a settlement or consent judgment. *Hewitt,* 482 U.S. at 760–61, 107 S.Ct. at 2676. According to the House Judiciary Committee:

> The phrase "prevailing party" is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits. It would also include a litigant who succeeds even if the case is concluded prior to a full evidentiary hearing before a judge or jury. If the litigation terminates by consent decree, for example, it would be proper to award counsel fees.

H.R.Rep. No. 1558, 94th Cong.2d Sess. 1, 7 (1976) (citations omitted); *see also Gagne v. Maher,* 594 F.2d 336, 340 (2d Cir.1979) (attorneys' fees should be awarded in suits that are settled as well as in those that proceed to a judgment), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

To determine prevailing party status under Section 1988, the Supreme Court has instructed federal courts to consider whether the plaintiff "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Texas State Teachers Ass'n. v. Garland Indep. School Dist.,* 489 U.S. 782, 788–89, 109 S.Ct. 1486, 1491–92, 103 L.Ed.2d 866 (1989) (citations omitted). "At a minimum, the plaintiff must demonstrate a change in the legal relationship between itself and the defendant arising from the resolution of the lawsuit.... [as well as a] 'causal connection between the relief obtained and the litigation in which the fees are sought.'" *Koster,* 903 F.2d at 134–35 (citations omitted).

Here, Helbrans satisfies the test for prevailing party status. Through settlement, he obtained precisely the relief he sought: a prohibition on the State's removal of his facial hair and on placing him in administrative segregation. *Koster,* 903 F.2d at 134 ("In applying the prevailing party standard, it is helpful to identify the relief sought by the plaintiff and compare it with the relief obtained as a result of the suit."). Further, the settlement agreement unquestionably changed Helbrans' legal relationship with the State by exempting him from Directive 4914's initial shave requirements. And it is beyond peradventure that this litigation resulted in the relief Helbrans sought.

The State contends that even if Helbrans is a prevailing party, special circumstances exist that render recovery of attorneys' fees unjust. *Northcross v. Board of Educ. of the Memphis City Schools,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973) (successful plaintiffs should ordinarily recover attorneys' fees unless special circumstance would render such an award unjust). Specifically, defendants contend that nothing in the record indicates that they would have enforced Directive 4914 against Helbrans and, consequently, this litigation was unnecessary. While perhaps novel, this argument is too little and too late. It contradicts defendants' vigorous opposition to Helbrans' motion for injunctive relief where not only did the State ardently defend the constitutionality of Directive 4914, it also cross-examined Helbrans regarding the sincerity of his religious beliefs.

■ The State next argues that Helbrans cannot receive attorneys' fees because the individual defendants are entitled to qualified immunity. The State contends that when Helbrans was first incarcerated, it was not clear whether the requirement of an initial shave under Directive 4914 would violate Helbrans' religious rights. *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Robison v. Via,* 821 F.2d 913, 920 (2d Cir.1987).

■ Government officials may assert a qualified immunity defense against a claim for money damages. This defense has no application, however, to the instant action: Helbrans sought only injunctive relief, and not money damages, against the individual defendants. *Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64

L.Ed.2d 641 (1980) (State official's qualified immunity defense against action for money damages does not preclude an action for injunctive relief against official's enforcement of an unconstitutional policy). Moreover, the defense has no application to a request for attorneys fees under Section 1988. Attorneys' fees are "available in any action to enforce a provision of § 1983 ... even when damages would be barred or limited by 'immunity doctrines and special defenses, available only to public officials.'" *Pulliam v. Allen,* 466 U.S. 522, 543, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984) (citation omitted); *see also Consumers Union,* 446 U.S. at 738–39 ([t]he House Committee Report on [§ 1988] indicates that Congress intended to permit attorney's fees awards in cases in which prospective relief was properly awarded against defendants who would be immune from damages awards.); *Tonya K. v. Board of Educ. of the City of Chicago,* 847 F.2d 1243, 1246 (7th Cir.1988) (attorneys' fee award does not violate qualified immunity).

Accordingly, Helbrans qualifies as a prevailing party under Section 1988 and shall be compensated for his reasonable attorneys' fees, subject to the following limitations.

### B. *Reduction of Fees*

■ Helbrans' attorneys have submitted fees totalling $78,739.00, which consists of approximately 282 hours of billed work. At the outset, while recognizing that our First Amendment rights are precious, requiring the State to withdraw $78,739.00 from its tax coffers to fund the preservation of Helbrans' rights and beard would be, in the most charitable terms, excessive. Section 1988 is designed to encourage private practitioners to vindicate the civil rights of aggrieved citizens, but it is also designed to steer attorneys toward civic-minded public service, as evidenced by the description of their role as "private attorneys general." In other words, the recipe for attorneys' fees in cases like these must include a dollop of *pro bono* service. Some lawyers may believe that Section 1988 represents a goose that lays golden eggs. Whether that proposition is true or not, this sort of application, in my view, goes some distance toward killing that goose. Similarly, the Second Circuit has concluded that "attorney's fees are to be awarded 'with an "eye to moderation," seeking to avoid either the reality or the appearance of awarding "windfall fees."'" *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1139 (2d Cir.1983) (citations omitted).

■ With that said, the proper measure for a fee award is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), commonly referred to as the lodestar amount. The following is a breakdown of the submitted bill:

| Attorney | Hours | Rate | Total |
| --- | --- | --- | --- |
| Gerald L. Shargel (Solo Practitioner) | 42.00 | $450/hr | $18,900.00 |
| David A. Barrett (D & B Senior Partner) | 6.75 | $350/hr | $ 2,362.50 |
| Nicholas A. Gravante, Jr. (D & B Junior Partner) | 15.50 | $315/hr | $ 4,882.50 |
| Jack G. Stern (D & B Senior Associate) | 116.25 | $295/hr | $34,293.75 |
| David A. Berger (D & B Mid-level Associate) | 15.50 | $210/hr | $ 3,255.00 |
| Michael S. Vogel (D & B Mid-level Associate) | 8.75 | $200/hr | $ 1,750.00 |
| Alexandra Kambouris (D & B Junior Associate) | 28.00 | $180/hr | $ 5,040.00 |
| Lauraine Avallone (D & B Law Clerk) | 16.00 | $120/hr | $ 1,920.00 |

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Jennifer Ruzicka | 33.25 | $ 75/hr | $ 2,493.00 |
| (D & B Paralegal) | | | |
| | | | $74,896.75 |
| Disbursements: | | | $ 4,016.50 |
| TOTAL | | | $78,913.25 [1] |

The State argues that these fees should be reduced because (1) the hours expended and the rates requested are excessive; (2) the fee application is defective in that it is not based on authenticated contemporaneous time records; and (3) the bill contains costs associated with procuring an expert in computer-generated photography.

### 1. *Hours expended*

 It is well settled that unreasonable hours expended are not compensable under Section 1988. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40. "In calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992) (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 236 (2d Cir.1985)). If the court concludes that any expenditure of time was unreasonable, it may reduce the fees accordingly. *See, e.g., Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1939–40; *Clarke,* 960 F.2d at 1153; *Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522, 525 (2d Cir.1991).

 Here, the State claims that Helbrans' attorneys overlitigated this action and, consequently, billed an excessive number of hours. This Court agrees. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993).

While there is no question that the State took an adversarial posture, the issues to be resolved and the time period provided in which to resolve them suggest that the more than 280 hours expended by Helbrans' attorneys, including some fifty hours or more in conferences with three or more lawyers, was excessive. Moreover, staffing this matter with a team of seven lawyers, a law clerk and a paralegal created additional inefficiencies. Rather than reducing each lawyer's time with little knowledge of his or her contribution, each participant's hours, as well as the total disbursements charged, shall be reduced by 10%.

### 2. *Hourly Rates*

 Helbrans' counsel is entitled to hourly rates that conform to market rates in New York City for lawyers of comparable skill and experience. *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984) (rates should conform to those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). In determining a reasonable hourly rate, courts consider, *inter alia,* the size and experience of the firm. *See, e.g., Jennette v. City of New York,* 800 F.Supp. 1165, 1169 (S.D.N.Y.1992) ($200 per hour was a reasonable fee for solo practitioner with ten years experience of civil rights actions); *Malarkey v. Texaco, Inc.,* 794 F.Supp. 1237, 1245–46 (S.D.N.Y.1992) (Long Island law firm inexperienced in civil rights cases awarded $175 per hour for partners and $100 per hour for associates), *aff'd,* 983 F.2d 1204 (2d Cir.1993); *Rivera v. Dyett,* 762 F.Supp. 1109, 1118 (S.D.N.Y.1991) ($165 per hour was a reasonable fee for partner in small Westchester County law firm); *Pastre v. Weber,* 800 F.Supp. 1120, 1125 (S.D.N.Y.1991) ($205 per hour was a reasonable fee for 8th year associate at Hughes Hubbard & Reed); *Pickman v. Dole,* 671 F.Supp. 982, 990 (S.D.N.Y.1987) ($25 per hour was a reasonable fee for a paralegal).

**1.** Our computation of the submitted bill deviates slightly from the $78,739.00 calculated by Helbrans' attorneys.

██ Helbrans' counsel has charged attorney rates ranging from $180 to $450 per hour, a law clerk rate of $120 per hour, and a paralegal rate of $75 per hour. Based on a review of D & B's as well as Mr. Shargel's past experience as civil rights lawyers, the size of their respective firms, the type of work performed, and determinations made by other courts as to the prevailing market rate for counsel of comparable skill, this Court finds that the following fees are reasonable in this action: $60 for D & B paralegals; $75 for law clerks; $125 for Duker & Barrett junior associates; $175 for D & B mid-level associates; $225 for D & B senior associates; $250 for D & B junior partners; $300 for D & B senior partners; and $350 for Mr. Shargel.

### 3. Sufficiency of Time Records

██ Helbrans' counsel is required to produce detailed contemporaneous records of the hours they billed on Helbrans' behalf. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. According to Justice Burger, "the party who seeks payment must keep sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Id.* at 441, 103 S.Ct. at 1943 (Burger, J., concurring). The State contends that the records submitted by Helbrans' counsel lack the specificity and detail necessary to make a fair evaluation of the time expended and do not allow an assessment of whether there was any duplication of work.

██ Time records for purposes of collecting attorneys' fees under Section 1988 must be contemporaneous and "specify, for each attorney the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148. Counsel is not required to "record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12 (citation omitted). After carefully reviewing the time records submitted by Helbrans' counsel, this Court finds that the records provide a sufficient basis for determining the nature and length of work that each attorney contributed to this action.

### 4. Cost of Expert

██ The State claims that Helbrans' counsel should not be reimbursed for the costs of its expert and refers the Court to the stipulation executed by the parties stating that "[p]laintiff shall bear the cost of creating the computer-generated photographs and providing it to Defendant." Helbrans' attorneys contend that they are entitled to reimbursement to the extent that they spent time working with the expert, which was essential to the presentation of Helbrans' case.

Although the parties' stipulation makes clear that Helbrans is not entitled to reimbursement for expert fees,[2] this does not prohibit reimbursement under Section 1988 for time spent by attorneys working with experts, which, in this Court's lexicon, constitutes legal work.

### 5. Recalculation of fees

Consistent with above, the Court has recalculated Helbrans' recoverable attorneys' fees as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Gerald L. Shargel (Solo Practitioner) | 37.8 | $350/hr | $13,230 |
| David A. Barrett (D & B Senior Partner) | 6.075 | $300/hr | $ 1,822.50 |

2. The Supreme Court's ruling that successful litigants may not recover expert fees as part of attorneys' fee awards, *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 86–102, 111 S.Ct. 1138, 1140–49, 113 L.Ed.2d 68 (1991), has apparently been overruled by the Civil Rights Act of 1991. *Myree v. Local 41, International Brotherhood of Electrical Workers*, 847 F.Supp. 1059, 1066 n. 7 (W.D.N.Y.), *aff'd*, 29 F.3d 620 (2d Cir.1994); *Cabrera v. Fischler*, 814 F.Supp. 269, 291 (E.D.N.Y.1993), *modified on other grounds*, 24 F.3d 372 (1994); *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1306 n. 13 (N.D.Cal.1992).

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Nicholas A. Gravante, Jr. (D & B Junior Partner) | 13.95 | $250/hr | $ 3,487.50 |
| Jack G. Stern (D & B Senior Associate) | 104.625 | $225/hr | $23,540.63 |
| David A. Berger (D & B Mid-level Associate) | 13.95 | $175/hr | $ 2,441.25 |
| Michael S. Vogel (D & B Mid-level Associate) | 7.875 | $175/hr | $ 1,378.13 |
| Alexandra Kambouris (D & B Junior Associate) | 25.2 | $125/hr | $ 3,150 |
| Lauraine Avallone (D & B Law Clerk) | 14.4 | $ 75/hr | $ 1,080 |
| Jennifer Ruzicka (D & B Paralegal) | 29.925 | $ 60/hr | $ 1,795.50 |

| | | | $51,925.51 |
| Disbursements: | | | $ 3,614.85 |
| TOTAL | | | $55,540.36 |

---

*Conclusion*

For the foregoing reasons, Helbrans' motion for attorneys' fees is GRANTED. The fees requested, however, shall be reduced by the amount specified in this opinion. After recalculating the submitted bill, and allowing for reasonable disbursements, Helbrans' recoverable fees total $55,540.36. The Clerk is directed to mark this action as closed on the docket.

SO ORDERED.